KEVIN G., a minor, by JO–ANN G. and Robert G., his parents and next friends, Plaintiffs,

v.

CRANSTON SCHOOL COMMITTEE and Kathleen A. Deluca, in her official capacity as Treasurer for The City of Cranston, Defendants.

Civil Action No. 96–138B.

United States District Court, D. Rhode Island.

May 23, 1997.

---

Richard J. Savage, Warwick, RI, for plaintiffs.

William F. Holt, Cranston, RI, for defendants.

## OPINION

FRANCIS J. BOYLE, Senior District Judge.

Kevin G. is an active 11–year old boy who lives with his parents in Cranston, R.I. Kevin struggles daily with several medical conditions and infirmities which make it difficult for him to learn in the usual public school classroom setting, and have caused him to fall behind grade level in the course of his education to date. Kevin has been out of school since 1994 because of his medical problems, and as a result, has fallen well behind other students his age in reading and math skills. For example, in September, 1995, while other students his age were entering the third grade, Kevin was reading on a first-grade level, and had math skills which approximated second-grade work. Kevin's ability to write, hear and follow spoken directions, and perform physical tasks also falls below expectations for a child of his age. Test results from the Woodcock–Johnson Psychoeducational Battery showed in March of 1995 that Kevin was performing at an age equivalent of 6 years and 5 months to 8 years and four months of age, depending on the task, meaning that at the time the test was given, Kevin was between approximately one and three years behind in his development.

Kevin's medical conditions include a respiratory problem doctors have treated with the insertion of a tracheal tube which can create an emergency need for medical attention should it cause his breathing to be stopped. A qualified nurse has to be on-site full-time at the school he attends to provide emergency assistance if it should be required. Therefore, in light of Kevin's educational and medical needs, Cranston school officials, in cooperation with Plaintiffs, have designated Kevin as a student with special educational needs and attempted to work out an educational program suited to Kevin's special requirements, in accord with the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1411–1415, (the "Act").

The Act requires states receiving federal educational funds to implement oversight systems and review procedures for local school agencies which have the primary responsibility to provide a "free appropriate public education" for students designated as having special needs. 20 U.S.C.A. § 1412 (West Supp.1997). The local school system is required to design and implement an "Individual Educational Program" for each student at least annually, to provide the student with educational benefits. 20 U.S.C.A. § 1414 (West Supp.1997).

In September, 1995, Cranston school officials and Plaintiffs worked out an educational plan for Kevin which was acceptable to both parties in all respects save one. Plaintiffs argue that the individual education program designed for Kevin is inappropriate in that it requires he attend a school approximately three miles from his home, the Gladstone School, instead of his neighborhood school, the Waterman School, which is located on the same street where he lives. Cranston officials placed Kevin at Gladstone because it has a full-time nurse on duty during school hours, while Waterman does not.

Plaintiffs assert that attendance at his neighborhood school would provide Kevin with opportunities to form social relationships with other children which would extend beyond the school day, and that these social

opportunities are important to Kevin's development. Moreover, Plaintiffs assert that placing Kevin in "the least restrictive" educational setting, as required by the Act, necessitates placement at his neighborhood school. Plaintiffs assert that Cranston's withdrawal of its initial recommendation that Kevin be placed in a self-contained special education classroom, instead of a regular third-grade classroom improperly influenced the decision to place Kevin at Gladstone, which has such self-contained classrooms, while Waterman does not. Plaintiffs believe Cranston improperly considered this factor in placing Kevin at Gladstone, because this placement will have the effect of "setting him up to fail," and making the transition to a self-contained classroom an attractive alternative if Kevin does not progress quickly enough. Furthermore, Plaintiffs maintain that the school system could move a full-time nurse to Waterman from some other school facility without additional cost to the city. In addition, Plaintiffs claim that Kevin's mother must be available in case of medical emergency, and that the difference in travel time from their home to the Gladstone school as opposed to the Waterman school, and parking difficulties at Gladstone not present at Waterman, support their contention that a placement in Gladstone is inappropriate for Kevin.

Cranston officials argue in response that social opportunities, while a factor in the educational program designed for Kevin, cannot be given more weight than other important factors, such as his safety in a medical emergency. School officials also argue that the least restrictive environment for Kevin's education is not necessarily in his neighborhood school. Cranston claims that the availability of a self-contained special education classroom at Gladstone, "as a fall-back position" did not improperly influence school officials' decision to place him at the school. Instead, the city argues that the original recommendation that Kevin be placed in a self-contained classroom was withdrawn in a spirit of accommodation with the Plaintiffs, not as part of a plan to switch back to such a placement at the first sign of difficulty. Moreover, the city asserts that sufficient reason exists for the assignments of school nurses within the school system, and such assignments should not be altered to meet any individual student's needs. In addition, the city claims that Gladstone is not so distant from Kevin's home and parking problems at Gladstone not so insurmountable as to make Kevin's mother unavailable.

Plaintiffs objected to the proposed program to the Commissioner of Education, and a hearing was held. The hearing officer found that the educational plan offered by Cranston was appropriate, and that the school system was not required to place Kevin at his neighborhood school. Plaintiffs requested review of this hearing decision, and a review was performed. The reviewing officer also found the school system's plan appropriate to Kevin's needs. Plaintiffs then appealed to this court, pursuant to 20 U.S.C. § 1415(e)(2). (West 1990). While Plaintiffs challenged the plan through the administrative process and in this court, Kevin has not been in attendance at any school. Plaintiffs initially refused Cranston's offer of tutoring assistance amounting to six hours per week, but have since accepted such tutoring services.

■ The standard of this court's review of the administrative decisions below must be addressed as a threshold question on appeal. 20 U.S.C.A. § 1415(e)(2) provides in part that: "... the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." This court must perform an "independent review" of the educational program at issue, but also must give "due weight" to the findings in the administrative process below, because the procedural protections provided by the administrative process would be rendered meaningless if courts could simply substitute their own preferences for the administrative officers' evaluations. *Board of Educ. of Hendrick Hudson Central School Dist. Westchester County v. Rowley,* 458 U.S. 176, 205–06, 102 S.Ct. 3034, 3050–51, 73 L.Ed.2d 690 (1982). A searching examination of the decisions rendered below is required, but this court may neither turn a blind eye towards

these decisions, nor discard them without sound reason. *Town of Burlington v. Department of Educ. for the Commonwealth of Mass.*, 736 F.2d 773, 792 (1st Cir.1984), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) ("The court, in recognition of the expertise of the administrative agency, must consider the findings carefully, and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in part or in whole."). Therefore, it has been said of the trial court's involvement in this process that the court performs a function of "involved oversight" of the process below. *Roland M. v. Concord School Comm.*, 910 F.2d 983, 989 (1st Cir.1990), *cert. denied* 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1985).

In light of this court's role in this process, assessment of the Individual Educational Program requires an answer to two questions: has the state complied with the procedures set forth in the Act, and is the program reasonably calculated to enable the child to receive educational benefits? *Id.* at 990. Plaintiffs do not argue that the procedures followed were deficient, but rather maintain only that the decisions are incorrect. *Id.* "We keep in mind that, in cases arising under the Act, the burden rests with the complaining party to prove that the agency's decision was wrong," and this court must therefore address the substantive feature of the program which Plaintiffs seek to challenge, Kevin's placement at the Gladstone school. *Id.* at 991 (citations omitted).

■ While Plaintiffs correctly assert that the emphasis in assessing an "individual educational plan" is on whether the plan meets the particular student's requirements, they are incorrect in their assertion that in this case, the school system was wrong to recommend placing Kevin in the Gladstone school. Plaintiffs seek the best of all possible plans, but there simply is no legal basis for the assertion that the plan designed for the student be optimal in every aspect. *Rowley*, 458 U.S. at 200, 102 S.Ct. at 3047–48. This legislation was "designed to provide a basic floor of opportunity;" the Act does not require that the states "maximize the potential of each handicapped child commensurate with the opportunity provided nonhandicapped children... . Rather, Congress sought primarily to ... provide [handicapped children] with access to a free public education." *Id.* Implicit in the law's mandate that handicapped children be provided a free appropriate public education ·is a "requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." *Id.* Therefore, although placement at Waterman may offer Kevin social opportunities which might not be available to him at Gladstone, Plaintiffs cannot deny that placement at Gladstone offers Kevin "some educational benefit," and the purported loss of opportunity for social contacts cannot be the basis for a finding that the program is inappropriate under the Act.

Moreover, Plaintiffs point to the Act's requirement that students with special needs be placed in the "least restrictive environment" possible, and "mainstreamed," educated with other students without special needs in a regular classroom setting, whenever possible, and assert that this necessitates Kevin's placement in Waterman. *See* 20 U.S.C.A. § 1412(5)(B); 34 C.F.R. § 300.552. Waterman does not have self-contained special education classrooms, while Gladstone does. Plaintiffs assert that the school system's original plan to place Kevin in a self-contained special education classroom has not been abandoned by the city for the "mainstream" approach contained in the educational program submitted, but rather was only shelved temporarily. Plaintiffs see the availability of self-contained classrooms at Gladstone as a factor in the school system's decision to place Kevin there as part of a larger plan to "set him up to fail" and implement the school system's allegedly preferred plan of placing Kevin in a self-contained special education class without having to move him to another school. Plaintiffs have done little more than allege an ulterior motive for the placement suggested by the school system, and have offered no proof of any improper motivation in the school system's consideration of the availability of self-contained special education classes at Gladstone as a "fallback position" for Kevin. In fact, the individual education plan for Kevin in dispute

does not call for him to be placed in a self-contained special education classroom.

The regulations governing placement of students with special needs under the Act do require that students should be placed as close to home as possible, and that absent other requirements, the student should be placed in the school he would attend if not disabled, here, the neighborhood school, but the regulations do not mandate such placement in every case. 34 C.F.R. § 300.552 ("Each public agency [governed by the Act] shall ensure that: (a) the educational placement of each child with a disability—.... (3) Is *as close as possible* to the child's home .... (c) *Unless the IEP of a child with a disability requires some other arrangement,* the child is educated in the school that he or she would attend if nondisabled.") (emphasis added). Certainly, in these circumstances, the lack of a nurse at the neighborhood school is the type of special requirement which should override the preference for the neighborhood school.

Plaintiffs argue that it would be a simple matter for the school system to change the allocation and assignment of nurses within the school system to provide Kevin with a full-time nurse at his neighborhood school. Plaintiffs point out that the city changed its policy for assignment of nurses before the 1995–96 school year so that, for the first time, each of the five high schools would have a nurse full-time. Plaintiffs claim that the history of not having a nurse on duty at each high school before 1995 proves that assigning a nurse to each high school is not necessary, and that a nurse could be made available for Kevin's neighborhood school by leaving the high schools with four nurses to share and assigning the fifth nurse to Kevin's school. This change in assignments would arguably obviate the need for the school system to hire an additional nurse for Kevin's school.

Plaintiffs go too far in their assertions on this point. The school system has an obligation to provide Kevin with a school placement which includes a nurse on duty full-time at the school he attends because of his medical condition, but the school system is not obligated to provide that placement in the neighborhood school. Plaintiffs would have this court examine the reasons for the assignment of nurses within the school system and make a determination as to whether assignment of one of the system's nurses at Kevin's school is not better than the assignments set by the school system. This the court will not do. The school system must be allowed to assign nurses within its schools to meet the requirements of all the students enrolled in the system as a whole. So long as the requirement that Kevin have a nurse at the school he attends is met, the school system's decision as to where nurses will be assigned for duty cannot be second-guessed by this court.

While it may be preferable to have Kevin attend school just a short distance from his home so that his mother would be available in case of emergency, the Act does not require optimal results. Cranston has provided for Kevin's needs in a school which is relatively nearby, although not as close as his neighborhood school. He should begin attending that school, in order to have him begin deriving educational benefits from the free appropriate public education to which he is rightfully entitled.

The appeal from the finding of the Commissioner of Education that Kevin G.'s educational plan is appropriate and conforms to the requirements of the Individuals with Disabilities Education Act is therefore denied.